IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KENNETH THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-cv-2241 |
| | ) |
| JELD-WEN, INC., and | ) (Removed from Circuit Court of |
| JELD-WEN DOOR REPLACEMENT | ) Champaign County, Illinois, |
| SYSTEMS, INC. | ) Case No. 19-L-108) |
| | ) |
| Defendants. | ) |

**DEFENDANT, JELD-WEN, INC.'S, MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant, Jeld-Wen, Inc. ( "Jeld-Wen" or "Defendant"), by and through its attorneys, HEPLERBROOM, LLC, submits the following Memorandum of Law in Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6):

**Procedural History**

On July 29, 2019, Plaintiff filed his five-count complaint (doc. #1-1) in the Circuit Court for the Sixth Judicial Circuit in Champaign County, Illinois, naming Jeld-Wen, Inc. and Jeld-Wen Door Replacement Systems, Inc., as Defendants. On September 9, 2019, Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446 (doc. #1). Jeld-Wen now moves for dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

1

## Background Facts

Plaintiff alleges five causes of action in his complaint, each stemming from an incident occurring on August 8, 2017, including: (1) vicarious liability, (2) negligent hiring/retention, (3) negligent training/supervision, (4) negligent operation of a forklift, and (5) negligence on a premises liability theory. *See generally* doc. #1-1. In his complaint, he alleges the following sequence of events.

Plaintiff alleges that, on the day of the incident, he was an employee of the temp agency Express Employment Professionals, located at 1001 North Mattis Avenue, Champaign, IL 61821. Doc. #1-1, ¶ 5. On that day, he was placed with Defendant's window and door manufacturing business, at 201 Evans Road, Rantoul, IL 61866. *Id.*, ¶¶ 6-8. Plaintiff was assigned to the shipping department, where he was to package doors in crates for shipment to customers. *Id.*, ¶ 9. Plaintiff alleges he "was injured when an employee of Defendants dropped a door that weighed several hundred pounds off a forklift and it landed on Plaintiff." *Id.*, ¶ 10. He further alleges that "Defendants' employee and forklift operator was under the influence of drugs and/or alcohol" at the time of the accident. *Id.*, ¶ 5. Each of the theories of recovery sound in some variation of negligence on the part of Jeld-Wen toward employees and invitees. *Id.*, ¶¶ 13, 20, 29, 37, 44.

In Count I of the Complaint, Plaintiff claims that Jeld-Wen is vicariously liable for Plaintiff's injuries because the unnamed forklift operator "was acting in the course

and scope of his employment with Defendants as an agent, servant, and/or employee," and was allegedly "furthering the business interests of his employer(s), Defendants." *Id.*, ¶¶ 13-14.  In Count II, Plaintiff claims that Jeld-Wen negligently hired and/or retained this unnamed forklift operator because "it should have been evident that said employee was unqualified for such a position," and should have known "an employee [] was performing tasks while under the influence of drugs and/or alcohol."  *Id.*, ¶¶ 21-24.  In Count III, Plaintiff claims Jeld-Wen had a duty to "take such measures and care … calculated to provide safe conditions at their business offices for invitees, including Plaintiff."  *Id.*, ¶ 30.  He further claims Defendant had a duty to train and supervise employees for the general safety of invitees, and alleges Jeld-Wen breached this duty by failing to train and supervise forklift operators, and by failing to notice that a forklift operator was working under the influence of drugs or alcohol.  *Id.*, ¶¶ 31-32.

In Count IV, Plaintiff alleges direct negligence, in that Jeld-Wen—as a corporate principal—"chose to drive the forklift too fast" for the work conditions, "chose to drive the forklift while under the influence," failed to keep a careful lookout while operating the forklift, and allowed the door on the forklift to fall on Plaintiff.  *Id.*, ¶¶ 38-39.  Finally, in Count V, Plaintiff claims Jeld-Wen was negligent on a premises liability theory, that Defendant owed "a duty to keep [the] premises safe for invitees such as Plaintiff," and that it breached that duty in the manner stated in the other counts.  *Id.*, ¶¶ 45-47.  Plaintiff argues Jeld-Wen "failed to have procedures in place to ensure the

3

transportation of products to the shipping department was done in a manner that was not dangerous." *Id.*, ¶ 47. Instead, he argues, Jeld-Wen "chose to allow the product drop off location at the shipping department to be in a dangerous and unsafe location," thus "*subject[ing] shipping department employees to potential injury.*" *Id.* (Emphasis added.)

According to Jeld-Wen's Process Manager, Joe Samuels, who was Plaintiff's supervisor at the time of the accident, Plaintiff was under the direction and control of Defendant, worked the same hours as Jeld-Wen employees, and accepted directions from Jeld-Wen employees. Declaration of Joe Samuels, attached and marked as Exhibit C, ¶¶ 1-5. No supervisors from Express Employment Professionals—the temp agency that assigned Plaintiff—were present when Plaintiff performed his work at Jeld-Wen. *Id.*, ¶ 7. Defendant, and its employee Mr. Samuels, likewise had the authority to start and stop Plaintiff's work, and gave instructions to Plaintiff, which Plaintiff followed. *Id.*, ¶¶ 8, 11-12. Although Mr. Samuels and other Jeld-Wend employees were not empowered to terminate Plaintiff's employment with Express Employment Professionals, they "could at any time terminate [Plaintiff's] ability to work at Jeld-Wen and could have refused to allow him to return to work at Jeld-Wen." *Id.*, ¶ 9. Plaintiff acknowledged this arrangement. *Id.*, ¶ 10.

4

## Applicable Law

"A complaint states a claim on which relief may be granted when it narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). "In order to survive a motion to dismiss, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018), *reh'g denied* (Jan. 4, 2019) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although a plaintiff need not plead elements in his or her complaint that overcome affirmative defenses, "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Id.* at 300 (internal punctuation omitted). That is, "a motion to dismiss may be based on a defense provided that the allegations of the complaint … establish all the ingredients of the defense." *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 975 (W.D. Wis. 2007), *aff'd*, 556 F.3d 575 (7th Cir. 2009) (citing *U.S. Gypsum Co.*, 350 F.3d at 626).

Section 5(a) of the Illinois Workers' Compensation Act ("Act") (820 ILCS 305/5(a) (West 2016)), mandates that: "no common law or statutory right to recover damages from the employer … for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee" covered by the Act. This "exclusive-remedy" provision "is

5

part of the *quid pro quo* pursuant to which the employer assumes liability without fault but is relieved of the prospect of large verdicts for damages." *Holten v. Syncreon N. Am., Inc.*, 2019 IL App (2d) 180537, ¶ 26.

A plaintiff that qualifies as a "borrowed employee" under Illinois law cannot proceed with common law or statutory claims against the borrowing employer. "An employee in the general employment of one employer may be loaned to another for the performance of special work and become the employee of the employer to whom he or she is loaned while performing the special service." *Falge v. Lindoo Installations, Inc.*, 2017 IL App (2d) 160242, ¶ 15. "The Act specifically incorporates the borrowed-employee doctrine and extends the immunity of the exclusive-remedy provision to borrowing and loaning employers." *Holten*, 2019 IL App (2d) 180537, ¶ 28. Specifically, section 1(a)(4) of the Act provides:

> *"Where an employer operating under and subject to the provisions of this Act loans an employee to another such employer and such loaned employee sustains a compensable accidental injury in the employment of such borrowing employer and where such borrowing employer does not provide or pay the benefits or payments due such injured employee, such loaning employer is liable to provide or pay all benefits or payments due such employee under this Act* and as to such employee the liability of such loaning and borrowing employers is joint and several, provided that such loaning employer is in the absence of agreement to the contrary entitled to receive from such borrowing employer full reimbursement for all sums paid or incurred pursuant to this paragraph together with reasonable attorneys' fees and expenses in any hearings before the Illinois Workers' Compensation Commission or in any action to secure such reimbursement…."

820 ILCS 305/1(a)(4) (West 2016) (emphasis added).

Courts evaluate the existence of a borrowed-employee relationship for purposes of the exclusive-remedy provision by determining: (1) whether the alleged borrowing employer had the right to direct and control the manner in which the employee performed the work, and (2) whether there was an express or implied contract of hire between the employee and the alleged borrowing employer. *Holten*, 2019 IL App (2d) 180537, ¶ 52. Factors courts consider with respect to whether the alleged borrowing employer had the right to direct and control the manner in which the employee performed the work include whether: (1) the employee worked the same hours as the borrowing employer's employees; (2) the employee received instruction from the borrowing employer's foreperson and was assisted by the borrowing employer's employees; (3) the loaning employer's supervisors were not present; and (4) the borrowing employer was permitted to tell the employee when to start and stop working *Id.*, ¶ 54.

Another factor courts consider is whether the borrowing employer can terminate the borrowed employee. "Illinois law does not require [the borrowing employer] to have the power to terminate [Plaintiff's] employment altogether; it requires only that [the borrowing employer] have the power to discharge [Plaintiff] from his work with [the borrowing employer]." *Russell v. PPG Indus., Inc.*, 953 F.2d 326, 331 (7th Cir. 1992) (affirming the finding that injured worker was "borrowed employee" and was therefore prohibited by Illinois Workers' Compensation Act from suing borrowing employer for

common law or statutory remedies founded in negligence); *Wilhite v. Illinois Power Co.*, 139 F. Supp. 2d 971 (C.D. Ill. 2001) (same); *Falge*, 2017 IL App (2d) 160242, ¶ 15 (same).

With respect to whether there was an express or implied contract of hire between the employee and the alleged borrowing employer, "[a]n employee's consent to [such a contract] may be implied in the context of a business like a temporary employment agency." *Id.*, ¶ 68; *see also Falge*, 2017 IL App (2d) 160242, ¶ 25. Where facts demonstrate that the plaintiff employee acknowledged that he worked for the borrowing employer by way of a temporary employment agency, this second point is met. *Falge*, 2017 IL App (2d) 160242, ¶ 27.

"Whether an employee qualifies under the borrowed-servant doctrine is 'generally a question of fact'; however, 'it may become a question of law where undisputed facts are susceptible to but a single inference.' " *ExxonMobil Oil Corp. v. Amex Const. Co.*, 702 F. Supp. 2d 942, 980 (N.D. Ill. 2010) (quoting *Binz v. Brandt Const. Co.*, 301 F.3d 529, 533 (7th Cir. 2002)); *see also M & M Elec. Co. v. Indus. Comm'n*, 57 Ill. 2d 113, 117 (1974) ("[T]he most significant inquiry has concerned the extent to which the loaning employer delegated to the borrowing employer the right to control the manner of doing the work.")

**Argument**

The complaint should be dismissed with prejudice under Rule 12(b)(6) (FED. R. CIV. P. 12(b)(6)) because Plaintiff does not—and cannot—allege sufficient facts to state a plausible claim for the relief he seeks. *See U.S. Gypsum Co.*, 350 F.3d at 626. In fact, a complete defense to these claims appears in the Complaint itself. *NewSpin Sports*, 910 F.3d at 300. Plaintiff was a "borrowed employee," working under the direction and control of Jeld-Wen. *Holten*, 2019 IL App (2d) 180537, ¶ 52. First, this is evident by the level of control Jeld-Wen and its employees exerted over the terms of Plaintiff's work there; second, an implied contract for hire arose between Plaintiff and Jeld-Wen from his appointment through a temporary employment agency. *Id.*

Although Plaintiff pleads five seemingly different theories of negligence, he really offers a one basis of recovery: that Jeld-Wen controlled the manner and circumstances of his work there, and allegedly breached its duty of care by creating an unsafe work environment for its employees. This delegation of control from the temp agency to Jeld-Wen is the crucial factor in the "borrowed employee" inquiry (*see M & M Elec.*, 57 Ill. 2d at 117) and, as with other employees, any recovery owed to Plaintiff must be pursued through the Workers' Compensation Act. *See Holten*, 2019 IL App (2d) 180537, ¶ 52.

Plaintiff alleges that he was assigned to Jeld-Wen's business on the day of the accident, and that he was directed to the shipping department to package doors for

shipment to customers. Doc. #1-1, ¶¶ 8-9. He alleges Jeld-Wen owed duties of training, supervision, and retention to him and to other employees in the shipping department (*id.*, ¶¶ 24, 31-32, 47), which Jeld-Wen allegedly breached. It is apparent from the allegations on the face of the complaint that Jeld-Wen controlled the manner and circumstances of Plaintiff's work there. The company's policies covered not only the manner in which a forklift operator picked up a door, but also the discrete and minute "procedures in place to ensure [that] the transportation of products to the shipping department was done in a manner that was not dangerous" to employees, whether permanent or temporary. *Id.*, ¶ 47. There is no mention of duties owed by Express Employment Professionals, and any terms or safety requirements the temp agency imposed on the businesses that borrowed its workers.

    The declaration of Joe Samuels makes this relationship between Plaintiff and Jeld-Wen even more apparent. Mr. Samuels supervised Plaintiff, along with other Jeld-Wen employees, at the Rantoul facility. Exhibit C, ¶¶ 1, 3. He confirmed that Plaintiff worked the same hours as permanent Jeld-Wen employees, received instructions in the same manner as those employees, and likewise Plaintiff's work there started and stopped at the direction of Mr. Samuels and other Jeld-Wen supervisors. *Id.*, ¶¶ 4-6, 8. Mr. Samuels attested that no Express Employment Professionals supervisors were present at the Jeld-Wen site while Plaintiff was there. *Id.*, ¶ 7. Although Jeld-Wen supervisors could not terminate Plaintiff's employment with the temp agency, they

could terminate his ability to work at Jeld-Wen and refuse to allow him to work there. *Id.*, ¶ 9. This degree of control over Plaintiff's work—including the power to terminate that work—shows a borrowed employer/employee relationship arose that bars recovery outside of the Workers' Compensation Act. *See Falge*, 2017 IL App (2d) 160242, ¶ 18.

*Falge* is instructive on this point. In strikingly similar circumstances, the plaintiff temporary worker in *Falge* was injured in a forklift accident and brought a negligence suit against the shelving installation company to which he was assigned. *Id.*, ¶ 1. As in this case, no supervisors from the temp agency were present at the site (*id.*, ¶ 7), and the plaintiff's work was directed by employees at the borrowing employer's site (*id.*, ¶ 8). He filed a workers' compensation claim against the temp agency, and sued the shelving installation company for the negligent forklift operation by its employee. *Id.*, ¶ 9.

The *Falge* court ruled for the company, finding that "a borrowed-employee relationship existed between plaintiff and [the shelving company] at the time of his accident." *Id.*, ¶ 22. The court emphasized that plaintiff took direction from shelving company employees at the site, and there was "no evidence that anyone from [the temp agency] was involved with or was consulted about any task plaintiff performed" for the shelving company. *Id.*, ¶¶ 22, 24. This level of exclusive control showed a "borrowed-employee" relationship existed that foreclosed relief outside of the Act. *Id.*, ¶ 27; *see also Russell*, 953 F.2d at 331 (affirming finding for plant owner that subcontractor employee was "loaned employee" for furnace work, where plant owner controlled time and

11

circumstances of work, supervised employee, and had authority to dismiss him from the project); *Wilhite*, 139 F. Supp. 2d at 975 (same).

Turning to the second factor, the absence of Express Employment Professionals—both at the job site and in the allegations of the Complaint—not only shows that the terms of Plaintiff's employment were largely controlled by Jeld-Wen, but that an implied contract for work with Jeld-Wen arose from this absence. "[A]n employee's consent to the employer-employee relationship may be implied in the context of a business like a temporary employment agency." *Falge*, 2017 IL App (2d) 160242, ¶¶ 19, 25 (finding plaintiff temp worker impliedly acquiesced to an employment agreement "where the employee knows that the borrowing employer generally controls or is in charge of the employee's performance.")

Again as in *Falge*, Plaintiff consented to the assignment with Jeld-Wen through Express Employment Professionals. *Id.*, ¶ 25.  He acknowledged this temporary assignment in his complaint (doc. #1-1, ¶¶ 8-9), and Mr. Samuels' declaration confirms both the details of this arrangement and Plaintiff's acknowledgment of its terms (Exhibit C, ¶¶ 10-11).  By acknowledging that the temporary work would be controlled by Jeld-Wen, Plaintiff consented to the arrangement and an implied contract for hire arose that mandates an exclusive remedy for workplace injuries through the Act.  *See Falge*, 2017 IL App (2d) 160242, ¶¶ 25, 27; *also Russell*, 953 F.2d at 332.

It is clear from the complaint, and buttressed by Mr. Samuels' sworn declaration, that Jeld-Wen controlled the circumstances of Plaintiff's work, rendering him a "borrowed employee" under Illinois law.  An implied contract of employment arose from this arrangement, and Plaintiff is therefore limited to the Workers' Compensation Act in seeking redress for his alleged workplace injuries.  The facts are susceptible to but a single inference, and the Court should rule that, as a matter of law, Plaintiff was a "borrowed employee."  Accordingly, Plaintiff's complaint should be dismissed, with prejudice.

## Conclusion

WHEREFORE, Defendant, Jeld-Wen, Inc., prays that the Court enter an Order dismissing Plaintiff's complaint in its entirety, with prejudice, awarding Defendant its costs, and granting such other and further relief in its favor as the Court deems just and proper.

**Defendant Demand Trial by Jury.**

Respectfully submitted,

JELD-WEN, INC., Defendant

By: /s/ *Michael Patrick Murphy*
    One of its attorneys

Michael Patrick Murphy, #06284342
HEPLERBROOM, LLC
4340 Acer Grove Drive
Springfield, IL 62711
(217) 528-3674 (telephone)
(217) 528-3964 (facsimile)
E-mail: mpm@heplerbroom.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2019, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Andrew T. Drazen
Page Law
9930 Watson Road, Suite 100
St. Louis, MO 63126
andy@pagelaw.com
*Attorney for Plaintiff*

/s/ *Michael Patrick Murphy*